# Frederick S. Hartman, Plff. in Err., *v.* Reading & Pottsville Railroad Company, now Pennsylvania Schuylkill Valley Railroad Company.

. In an action for damages to plaintiff's land by the construction of a railroad through it, where the jury personally inspects the premises, the measure of damages is the difference in the values of the land before and after the construction of the road. The question whether it was constructed so as to cause as little damages as possible should not be considered.

The plaintiff is not entitled to greater damages because the land was taken without his consent.

The jury are not bound by what any witness says, but should ascertain the difference in values by their own observations on the ground as well as from the evidence produced before them.

(Argued February 29, 1888. Decided April 30, 1888.)

January Term, 1888, No. 174, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Berks County to review a judgment in favor of the plaintiff in an action of assumpsit, November Term, 1885, No. 48. Affirmed.

This was an appeal put at issue as an action of assumpsit, by the Reading & Pottsville Railroad Company, defendant, from a report of viewers appointed on the petition of Frederick S. Hartman, plaintiff, to assess the damages caused by the crossing of his farm by the defendant's road; the award of the viewers was $17,160. After the jury were sworn, by consent of both counsel they were taken to the premises of the plaintiff, for the purpose of seeing how the road crossed the same.

The defendant presented, *inter alia,* the following points:

2. If the jurors, or any of them, have got the idea that the railroad company should have constructed culverts or run grade crossings at the plaintiff's lane, and that it should pay to the plaintiff what it may have saved by not constructing such culverts, they must, in considering this case, carefully rid themselves of such idea. There is no evidence in the case that such crossings could have been constructed. The sole measure of damages is the difference in the market value of the plaintiff's entire property before and after the construction of the railroad as affected thereby.

*Ans.* Affirmed. I may add here that it is not a question as to whether a culvert could have been constructed there or not. The railroad company in the construction of its road always builds it in a way which is regarded by it as the best, and would necessarily, in crossing a man's property, do as little damage as possible, for the reason that afterwards, when it comes to settle with the party over whose lands it has gone, if it would wantonly do any damage, it would only have to pay for it. 2

5. The jury are to estimate the damages in this case by the difference in the market value of the plaintiff's property before and after the construction of the railroad as affected thereby;

they are not to allow more damages because the property was taken without the plaintiff's consent, nor because it was taken by a railroad company, but they are to make their estimate just as they would if the plaintiff voluntarily agreed to part with his property for a reasonable compensation, and if he had so agreed to part with it to an individual to be used for the same purposes and in the same manner.

*Ans.* Affirmed, with this qualification: Provided, that the reasonable compensation is such as would be the difference in the market value of the whole tract as affected by the construction of the railroad over it.    3

The court charged the jury, *inter alia,* as follows:

"You were taken up to the premises and you were given an opportunity of seeing the ground itself over which the railroad passes, and your own observation is just as good as that of any of the witnesses.   You were taken there for the purpose of seeing for yourselves; and the witnesses who were called and examined here in court were for the purpose of enlightening you further or explaining to you more in detail that which you might have observed and did not, or bringing out more prominently before you the injury, if any, which the property has sustained.

"You observed, doubtless, that there was a great difference in the opinions of the witnesses, ranging from as high as $25,000 down to about $4,000.   The jury are not bound by what any witness says; but you are to gather from the whole testimony what is the difference in the market value of this property immediately before the railroad was constructed and after the railroad was constructed over it.   You are to ascertain what that difference is by your own observations upon the ground, and also from the evidence which was produced before you.   From it all, the jury must make up their judgment."[1]

"Each one of these witnesses was inquired of by the plaintiff as to how he made up his estimate; and the jury will consider all that testimony, taking that also into consideration, with the view they had of the premises; and are to determine the value of the testimony and what portions they will adopt to guide them in their deliberation."[4]

"Now, it is for the jury to consider all this evidence.   You were upon the ground, you saw for yourselves the premises; you saw how the property was occupied by the railroad.   You saw for yourselves what formerly were the lanes, and the conven-

iences there may have been; and it is for you, from all this evidence, to make up a verdict which you believe is right between the parties, without any prejudice, without any feeling."5

Verdict for the plaintiff for $16,322.11, and judgment thereon.

Plaintiff took this writ, the assignments of error specifying: (1, 4, 5) The portions of the charge above set out; and (2, 3) the answers to the defendant's points.

*Ermentrout & Ruhl,* for plaintiff in error.—The object of a view is to acquaint the jury with the physical situation, condition, and surroundings of the thing viewed. Washburn v. Milwaukee & L. W. R. Co. 59 Wis. 364, 18 N. W. 328.

In order that a witness may be competent to testify intelligently as to the market value of land, he should have some special opportunity for observation; he should, in a general way, and to a reasonable extent, have in his mind the *data* from which a proper estimate of value ought to be made; if interrogated, he should be able to disclose sufficient actual knowledge of the subject to indicate that he is in condition to know what he proposes to state, and to enable the jury to judge of the probable approximate accuracy of the conclusions. Pittsburgh, V. & C. R. Co. v. Vance, 115 Pa. 325, 8 Atl. 764.

In this case, a jury composed of citizens living remote from the land of the plaintiff, who had no knowledge of values of land in the neighborhood, were substantially told by the court that their observation and means of knowledge were just as good as that of any of the witnesses, and that they were taken there for the purpose of seeing for themselves.

*Isaac Hiester* and *Cyrus G. Derr,* for defendant in error.— If the testimony of value and damages is conflicting, the jury may resort to their own general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony; but their assessment must be supported by the testimony, or it cannot stand. Washburn v. Milwaukee & L. W. R. Co. 59 Wis. 364, 18 N. W. 328.

As a declaration of the law governing the subject, the answer of the court to defendant's second point was strictly accurate. As an expression of opinion it was entirely warranted by the

circumstances of the case which required the presentation of the point. Leibig v. Steiner, 94 Pa. 472.

PER CURIAM:

We cannot discover anything in the assignments of error which requires a reversal of this case. Undoubtedly, when a jury have viewed and examined the premises, their own observation, as the learned judge well said, is just as good as that of any of the witnesses, and while they are not to disregard the testimony produced on the trial, they are, nevertheless, not required to repudiate the evidence of their own senses.

The judgment is affirmed.