# REPORTS OF CASES

## DECIDED IN

# THE SUPREME COURT

### OF THE

### STATE OF WASHINGTON.

29    1
42   525

[No. 4332.   Decided July 3, 1902.]

THE STATE OF WASHINGTON *on the Relation of Albert Schroeder et al.*, v. SUPERIOR COURT OF ADAMS COUNTY, *Frank II. Rudkin, Judge.*

APPROPRIATION OF LAND FOR HIGHWAYS — PUBLIC USE — NOT A JUDICIAL QUESTION.

A judicial determination as to the public utility of a county road which has been authorized by the board of county commissioners is not a prerequisite to the appropriation of land therefor under the power of eminent domain.

*Original Application for Writ of Review.*

W. W. *Zent* and *Sullivan, Nuzum & Nuzum*, for relators.

C. L. *Holcomb* and O. R. *Holcomb*, for respondents.

The opinion of the court was delivered by

WHITE, J.—This is an application for a writ of review. The affidavit and petition shows that on the 2d day of February, 1900, John Schmidt and others presented to the board of county commissioners of Adams county a

petition in writing praying for the establishment and lay-
ing out of a county road upon a certain route described
therein; that thereafter said John Schmidt filed with the
board his bond as required by law, and the board there-
upon ordered a survey to be made by the county surveyor,
and appointed three viewers to view said proposed road
and report to the board; that on the 3d of July, 1900, the
county surveyor and the viewers filed with the board a plat
showing the proposed route of the road and report thereon,
in which report the viewers recommended that the road
be established according to the plat thereof filed by the
county surveyor; that thereupon the board fixed the 4th
day of October, 1900, as the day for hearing said petition
and the report of the viewers, and that thereafter the
board of county commissioners proceeded to hear the view-
ers' report and the said petition, and to hear evidence
for and against said petition and report, and after hearing
said evidence the board found that said road should be
established as prayed for, with the exception of a slight
variation; that the board then determined that said pro-
posed road was a public use and benefit and for the public
use and convenience; that the board then made an order
directing that said road be opened in accordance with the
surveyor's plat and field notes filed therein, and the board
then and there awarded damages to the various land owners
over which said road would pass, except those who had
waived their claims thereto, and the board fixed the dam-
ages to the relators at $65, and this amount was thereafter
tendered to the relators, and the same was refused. The road
proposed and ordered laid out and established runs
through, across, and over and onto the lands of the relators,
as described in the petition for the laying out of the road.
Thereafter, after the refusal by the relators to accept said
damages, the board ordered and directed the county attor-

ney to institute, in the name of the county, condemnation proceedings as provided by law for the taking of private property for a public use. Thereafter the county attorney filed in the superior court of Adams county a petition for such purpose, wherein Adams county is plaintiff and the relators are defendants. The relators were served with process as required by law, and thereafter the case came on to be heard before the court and was called for trial. Thereupon the defendants requested the court to hear and determine the question of public utility and necessity before a jury be called to assess the damages to the relators. The judge of the court thereupon, upon his own motion, made and entered the following order:

"This cause came on regularly this day for trial, C. L. Holcomb, prosecuting attorney for said Adams county, appearing for the petitioner, and W. W. Zent for the defendants, and at the time the case was called for trial, and before the jury was impaneled to try said cause, the defendants offered to prove that the road petitioned for was not one of general utility, and objected to the impaneling of a jury until the court should first hear testimony and decide whether or not said road was one of general utility and necessity and ought to be established; but the court ruled that the decision of the board of county commissioners of said Adams county that said road petitioned for was one of general utility and should be opened and established was final and conclusive and binding upon the court, and that the only question opened to inquiry in this court was the amount of damages to be allowed and paid to the defendants, to which ruling of the court the defendants excepted, and exceptions were allowed."

Thereupon the court called a jury to assess the damages to be paid to the said relators, and refused to permit the relators to interrogate any witness as to the utility or necessity of said road, to which ruling of the court defendants duly excepted and their exceptions were entered in the

record. The jury was impaneled and sworn, heard the evidence adduced by the plaintiff and relators, and, after being instructed by the court, retired to deliberate upon its verdict, and thereafter returned a verdict assessing the damages to be paid to relators at the sum of $65; whereupon the jury was discharged. Judgment was entered upon said verdict against Adams county, and by said judgment it was ordered and decreed that said road, as petitioned for by said plaintiff, be established over, through, and across said defendants' land, as prayed for in said complaint. The error complained of for which it is claimed that no remedy by appeal is provided, is that the court erred in refusing to determine by competent proof whether or not the road petitioned for was one of general utility and convenience to the public, and that the court erred in granting plaintiff's judgment before determining the necessity for the road, and that the court erred in impaneling a jury before an order finding that the ground proposed to be taken was for public utility.

Property used for a public highway is under the direct control of public agencies. The opening and keeping open of public highways is a governmental function. From time immemorial a highway used for the public and controlled by the public has been considered a public use. There is no necessity for a legislative or judicial determination that such a way is for a public use. We must construe the constitution of this state as if that question was considered as settled by the makers of the constitution. As is said by Mr. Lewis in his work on Eminent Domain (2d ed.), 416:

"If we go back a century and place ourselves in the situation of those who framed the constitutions of the original states, we shall find that the principal purposes, if not the only purposes, for which private property was

appropriated were for ways and mills.    The mills were
mostly saw-mills and grist-mills, and were accustomed, and
in most cases obliged, to saw and grind for toll for whom-
soever applied.    They were for public use, in the stricter
sense of the phrase.    There was nothing in the practice
of the states at the time the earlier constitutions were
adopted to require that the words public use should have
the meaning of public benefit or advantage."

In course of time individuals and private corporations
desired the use of property for uses beneficial to the public,
such as for canals, turnpikes, railroads, etc.    In such case
it was held by the courts that the necessity, expediency,
or propriety of exercising the power of eminent domain and
the extent and manner of its exercise were questions of
general public policy, and belonged    to    the    legislative
department.    In granting the right of eminent domain to
individuals and private corporations in such cases, the
legislature often declared the purposes named in the act
to be for the public use, and it was contended that this
was conclusive upon the courts.    Under such a construc-
tion it can be seen that the legislature might declare a use
which was in reality a private use a public one, and, if
such a declaration was conclusive upon the courts, private
property might in many instances be taken for a private
use.    Hence, the makers of our constitution, in order to
put this question beyond controversy, inserted this clause in
§ 16, art. 1 of the constitution;

"Whenever an attempt is made to take private property
for a use alleged to be public, the question whether the
contemplated use be really public shall be a judicial ques-
tion, and determined as such, without regard to any legis-
lative assertion that the use is public."

This provision of the constitution is not a limitation upon
the right of the legislature to lay out public roads under
the control of public agencies, and no previous determi-

nation by the court that such a way is for a public use was necessary, and is not covered by this provision. Whether property is proposed to be taken for a public highway under the general statutes regulating such matters can be readily determined by an inspection of the proceedings, and, when it is apparent that the use is for a public highway, the court is not called upon to judicially determine that the use is a public use under the provision of the constitution referred to. When authority to lay out a county road has been conferred by the legislature, as under the general laws of this state, upon the boards of county commissioners, it rests with such boards to determine when such power shall be exercised and to what extent it shall be exercised, provided, of course, that the power is not extended or abused. These questions are political in their nature, and not judicial. Thus, whether a particular road or street shall be laid out rests entirely with the local authorities vested with the power in the premises. 1 Lewis, Eminent Domain (2d ed.), § 239; *Selde v. Lincoln County,* 25 Wash. 198 (65 Pac. 192).

The petition for the writ is denied.

REAVIS, C. J., and FULLERTON, HADLEY, ANDERS, MOUNT and DUNBAR, JJ., concur.