[No. 20674.   Department Two.   June 17, 1927.]

# THE STATE OF WASHINGTON, *on the Relation of James P. Flick, Plaintiff*, v. THE SUPERIOR COURT FOR CHELAN COUNTY *et al., Respondents.*[1]

[1] EMINENT DOMAIN (14, 39)—PUBLIC USE—HIGHWAYS—NECESSITY. A public use and necessity for taking land for a highway sufficiently appears, where a change in the location of a highway along a lake shore became necessary in the raising of the waters of a lake through condemnation proceedings by a public service corporation that had, by stipulation with the county, obtained condemnation of the old highway, paralleling the new location; there being no fraud or collusion between the relator and the county.

[2] SAME (40)—DELEGATION OF POWER—EXERCISE OF DISCRETION. The determination by county commissioners of the necessity for a public highway over lands sought to be acquired therefor is binding on the court, in the absence of some showing of actual fraud.

[3] HIGHWAYS (26)—VACATION—AUTHORITY OF COMMISSIONERS. Rem. 1927 Sup., § 7354-1, enacted with emergency clause, and providing that the state highway committee "shall have power, and in its sole discretion may, grant" the right to hold back the waters of a lake and overflow any state, county or permanent highway or road, did not impliedly repeal any of the provisions of Rem. Comp. Stat., §§ 6503-6509, authorizing the county commissioners to vacate county roads, on the petition of ten freeholders; but simply gives concurrent jurisdiction to the highway committee to vacate roads for the particular purpose specified.

[4] COUNTIES (22)—HIGHWAYS (20) — ESTABLISHMENT — APPEAL — SUPERSEDEAS. Appeals from orders of the county commissioners, vacating a county road and establishing a new route, under Rem. Comp. Stat., § 4076, do not automatically stay the proceedings or prevent further action.

Certiorari to review an order of the superior court for Chelan county, Parr, J., entered May 9, 1927, adjudging a public use and necessity in condemnation proceedings for a county road. Affirmed.

[1]Reported in 257 Pac. 231.

*John W. Hanna,* for relator.

*J. A. Adams, Charles S. Albert, Edwin C. Matthias,* and *Frank T. Post,* for respondents.

PARKER, J.—This is an original certiorari proceeding in this court, wherein relator Flick seeks review and reversal of an adjudication of public use and necessity rendered by the superior court for Chelan county in an eminent domain proceeding, in favor of Chelan county looking to its acquisition of a right of way over land of relator for a public road. The facts determinative of the several contentions here made in behalf of the relator were either admitted or conclusively proven upon the trial of the question of public use and necessity in the superior court, and may be summarized as follows:

Prior to December, 1926, the Chelan Electric Company had lawfully acquired large rights in the waters of Lake Chelan and in lands bordering thereon, giving it the right to raise the waters of the lake several feet and thereby overflow such lands up to an elevation of 1100 feet above sea level. The electric company, purposing to raise the waters of the lake by a dam at its outlet and thereby store a large additional quantity of water to develop electric energy for public use, sought, by eminent domain proceedings, the right to so overflow the additional lands bordering on the lake up to that level. It obtained adjudications of public use and necessity to that end, and this court, in the certiorari proceeding of *State ex rel. Chelan Electric Co. v. Superior Court,* in its decision reported in 142 Wash. 270, 253 Pac. 115, decided that the electric company possessed such right of eminent domain. It has, by eminent domain proceedings and by purchase, acquired the right to so overflow nearly all of the additional lands bordering upon the lake.

During many years past, the county has maintained a public road along and near the southerly shore of the lake for a distance of approximately six miles. This road lies below the 1100 foot sea level contour line, and will be overflowed by the waters of the lake when raised to that elevation; so the carrying of the electric company's public service project to completion will necessitate the acquiring of land for, and the construction of, a new road above the 1100 foot sea level contour line. The electric company has acquired for the county rights of way for a new road above and very near the 1100 foot sea level contour line along the whole of the six and one-half miles, excepting for a distance of 446 feet across land of relator, and for a distance of approximately one-quarter of a mile across land of another private owner. It is to acquire the right of way over relator's land that this eminent domain proceeding is being prosecuted by the county.

On September 25, 1926, the electric company commenced against Chelan county eminent domain proceedings in the superior court for that county seeking the acquisition of the right to overflow the existing county road lying along the lake shore below the 1100 foot contour line. On October 22, 1926, upon an agreed statement of facts and by stipulation of counsel for the electric company and counsel for the county, the superior court rendered an adjudication of public use and necessity and a decree of appropriation in favor of the electric company, awarding it the right to overflow the existing road lying below the 1100 foot contour line, conditioned that the electric company shall procure and cause to be vested in the county, by purchase or eminent domain proceedings prosecuted in the name of the county, a new right of way above the 1100 foot contour line and construct thereon a new road in all

respects as good, safe and convenient as the existing road to be overflowed, all according to certain maps, plans and specifications prepared therefor by the county engineer; such acquiring of the right of way and construction of the new road thereon to be wholly at the expense of the electric company, and, when so completed, to be regarded as full compensation to the county for the loss of the existing road by overflow resulting from the raising of the waters of the lake.

On December 10, 1926, more than ten freeholders of the county residing in the vicinity of the existing road and the proposed new road, petitioned the county commissioners to formally vacate the existing road and establish the new road as contemplated by the decree of appropriation rendered by the superior court on October 22, 1926. This, manifestly, was in contemplation of the county commissioners proceeding under the road vacation statute, Laws of 1901, ch. 90, p. 190, being Rem. Comp. Stat., §§ 6503-6509 [P. C. §§ 6061-6065b], and under the road establishing statute, Laws of 1925 (Ex. Sess.), ch. 173, p. 479. [Rem. 1927 Sup., § 6447-1 et seq.]

On March 18, 1927, the county commissioners, having considered the freeholders' petition for the vacation of the existing road, after due notice in the manner prescribed by the road vacation statute above cited, adopted by a unanimous vote a resolution vacating the existing road, such vacation to become effective upon the completion of the new road as contemplated; and on the same day, manifestly as a companion proceeding to the vacation proceeding, after due notice in the manner prescribed by the road establishing statute above cited, adopted by unanimous vote a resolution establishing the new road as contemplated, and authorized the commencement and

prosecution of such eminent domain proceedings in the name of the county as might be necessary to acquire rights of way over private property for the construction of the new road.

On April 7, 1927, relator, deeming himself aggrieved by the orders and resolutions of the county commissioners vacating the existing road and establishing the new road, appealed from each of those orders and resolutions to the superior court for Chelan county; manifestly, proceeding upon the theory that he had such right of appeal under Rem. Comp. Stat., § 4076, [P. C. § 1679], relating generally to appeals from decisions and orders of boards of county commissioners.

On the same day, relator commenced in the superior court for Chelan county an action in equity against the county, its officers and the Chelan Electric Company, seeking the setting aside of the orders and resolutions of the board of county commissioners vacating the existing road and establishing the new road, and an injunction restraining all action which might be assumed to be taken in pursuance of those orders and resolutions. No stay of any proceeding or action which might be taken in pursuance of the county commissioners' orders and resolutions has been attempted, either in the appeal proceedings or in the equity action, nor has either of those appeals or the equity action been disposed of by the superior court, so far as we are advised by this record.

On April 9, 1927, an eminent domain proceeding was commenced in the name of the county seeking the acquiring of a right of way for the new road over the land of relator, resulting in an adjudication of public use and necessity in favor of the electric company being rendered on April 30, 1927, which adjudication

is the subject of our review in this certiorari proceeding.

[1] It is contended in behalf of relator that the record of the eminent domain proceedings in the superior court, upon which its adjudication of public necessity is rested, not only fails to show any public necessity for the acquiring of the right of way for the new road over his land, but affirmatively shows to the contrary. The argument seems to be that the vacation of the existing road, which would render necessary the acquiring of the right of way for the new road, is only for the benefit of the electric company to enable it to carry its project to completion, and hence there is no public necessity for the establishing of the new road.

We may assume that the county commissioners vacated the existing road and established the new road for the purpose of enabling the electric company to raise the waters of the lake and thereby carry its project to completion; and also assume that, but for the vacation and overflow of the existing road, there would be no public necessity for the establishing of the new road, in view of the two practically parallelling and being very near each other. But this, to our minds, does not at all convincingly argue that the action of the county commissioners, both as to the vacation and establishing of the roads, was not an honest and good faith determination of the public necessity of establishing the new road to take the place of the existing road. It is not contended that there was the semblance of collusion between the county commissioners and the electric company amounting to actual fraud or bad faith on the part of either looking to the vacation of the existing road.

The electric company is to give, and the county is to

5—144 WASH.

receive, full and adequate compensation for the overflow of the existing road, in the acquiring of the new road at the expense of the electric company. Certainly, the mere fact that such vacation enables the electric company to proceed to the completion of its public service project does not, in the absence of some showing of actual collusion or fraud, negative the good faith or soundness of the county commissioners' conclusion that there is a public necessity for the acquiring of a right of way for and the construction of the new road incident to the vacation of the existing road.

[2] The taking of land for a public highway is taking it for a public use; and the necessity of so taking land, decided by public administrative authorities having jurisdiction such as is possessed by county commissioners in this state, is binding on the courts in the absence of some showing of actual fraud on the part of such authorities. The following of our decisions support this view: *State ex rel. Schroeder v. Superior Court,* 29 Wash. 1, 69 Pac. 366; *State ex rel. Murhard Estate Co. v. Superior Court,* 49 Wash. 392, 95 Pac. 488; *Tacoma v. Titlow,* 53 Wash. 217, 101 Pac. 827; *Tacoma v. Brown,* 69 Wash. 538, 125 Pac. 940; *State ex rel. Havercamp v. Superior Court,* 101 Wash. 260, 172 Pac. 254.

We conclude that the superior court rightly adjudicated that there is a public necessity for the acquiring of a right of way over relator's land for the newly established road, incident to the vacation of the existing road, as determined by the county commissioners. Counsel, of course, do not contend that the use for which the right of way is sought is not a public use.

[3] It is further contended in behalf of relator that, by the enactment of Laws of 1927, ch. 202, p. 290 [Rem. 1927 Sup., § 7354-1 *et seq.*], which, by virtue of an emergency clause, became effective on March 7,

1927, by the approval of the governor on that day, the county commissioners were divested of the power of vacation exercised by their final order and resolution adopted on March 18, 1927.

We have already noticed that the county commissioners vacated the existing road, exercising authority in that behalf under Laws of 1901, ch. 90, p. 190, being Rem. Comp. Stat., §§ 6503-6509. We do not understand counsel for relator to seriously contend that the county commissioners did not have the power of vacation under that law, or that they did not regularly proceed thereunder, excepting counsel's contention rested upon the alleged vacation of the existing road for the sole benefit of the electric company, a contention which we have above disposed of. That law is general in its nature, authorizing the vacation of county roads by county commissioners and prescribing procedure therefor; among other things, authorizing the commencement of such proceedings upon the petition of ten freeholders residing in the vicinity of the road or portion thereof proposed to be vacated. Laws of 1927, ch. 202, p. 290, which, it is insisted, supersedes the general road vacation law as to vacation of roads for purpose of overflow by public service corporations for public use, reads in part as follows:

"The state highway committee shall have power to, and in its sole discretion may, grant to any person or corporation the right, privilege and authority to perpetually back and hold the waters of any lake upon or over any state, county or permanent highway or road, or any street or alley within the limits of any town or city of the fourth class, or any part thereof, and overflow and inundate the same whenever the state supervisor of hydraulics shall deem it necessary for the purpose of erecting, constructing, maintaining or operating any water power plant, reservoir or works

for impounding water for power purposes, irrigation, mining or other public use and shall so certify to the state highway committee. The decision of the state highway committee, in the absence of bad faith, arbitrary, capricious or fraudulent action, shall be conclusive." [Rem. 1927 Sup., § 7354-1.]

That chapter further provides, in substance, that the right to so back and hold waters over a public highway shall be granted only to a public service corporation for public use, and only upon condition of such corporation furnishing a bond conditioned that it will pay all costs and expense incident to the relocation and construction of such highway, substantially of the same type and grade of construction as that of the highway to be overflowed; and further provides that, after the relocation, construction and opening to public travel of such new highway, the existing highway shall be deemed abandoned. The contention here made in behalf of relator seems to rest particularly upon the introductory language above quoted, to wit: "The state highway committee shall have power to, and in its sole discretion may, grant, etc.;" the argument being that the words, "in its sole discretion," constitute it the sole agency having exclusive jurisdiction to vacate or cause the abandonment of a highway for the purposes specified.

It seems to us, the words "in its sole discretion" do not mean that the state highway committee shall have exclusive jurisdiction to so cause the abandonment of a public highway, but only mean that, when they assume that jurisdiction under this new act, their decision, "in the absence of bad faith, arbitrary, capricious or fraudulent action, shall be conclusive." That is, their decision, being upon an administrative, and not a judicial, matter, shall not be subject to review by the

courts, except for bad faith, arbitrary, capricious or fraudulent action.

We are unable to see that there is any sound reason for holding the Laws of 1927, ch. 202, p. 290, as impliedly repealing any of the provisions of the general vacation of county roads law under which the county commissioners acted in the premises. To our minds, this new enactment is simply a giving to the state highway committee concurrent jurisdiction with the county commissioners over the subject of vacation or abandonment of county roads when such vacation or abandonment is sought for the particular purpose specified in the later law, which contains no repealing clause whatever, either by specific or general reference to existing laws. This court has repeatedly recognized the soundness of, and applied, the doctrine of "repeals by implication are not favored." *Leavenworth v. Billings,* 26 Wash. 1, 66 Pac. 107; *Callvert v. Winsor,* 26 Wash. 368, 67 Pac. 91; *Mathews v. Wagner,* 49 Wash. 54, 94 Pac. 759; *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645; *Bruner v. Little,* 97 Wash. 319, 166 Pac. 1166; *Arishin v. King County,* 103 Wash. 176, 173 Pac. 1020; *Batchelor v. Palmer,* 129 Wash. 150, 224 Pac. 685. We conclude that the county commissioners were not divested of jurisdiction in the premises by the passage and going into effect of Laws of 1927, ch. 202, p. 290. [Rem. 1927 Sup., § 7354-1.]

[4] Some further contention is made in behalf of relator that, by his appeals to the superior court from the orders and resolutions of the county commissioners vacating the existing road and establishing the new road, all further action on the part of the county in the premises is by those appeals automatically superseded, rendering the county without power to proceed further pending the appeals. We have noticed that no proceeding of any kind was taken by relator looking

to the staying of further proceedings by the county under the orders and resolutions of vacation and establishing of the roads; relator relying entirely upon his claim of the automatic staying effect of his appeals, which, manifestly were taken in pursuance of Rem. Comp. Stat., § 4076, *supra,* relating generally to appeals from orders and decisions of boards of county commissioners, which appeal statute contains no superseding or staying provision incident to such appeals.

What superseding effect an appeal from a decision of a tribunal determining purely private rights may have, there being no statutory method of supersedeas prescribed, we need not determine. It may be that, in such a situation, the court to which the appeal is taken may have inherent power, in its discretion, to stay action upon the decision sought to be so reviewed. These appeals, however, are attempted to be taken from decisions of an administrative tribunal, not a judicial tribunal, which has determined an administrative and not a judicial question. It may be that certiorari proceedings seeking review of such decisions of the county commissioners might, in the discretion of the reviewing court, call for their superseding by order of the reviewing court. But that, also, is a different problem from the one here presented. We conclude that relator's appeals from the orders and resolutions of vacations and establishing of the roads do not automatically have the effect of superseding and staying further action in pursuance of those orders and resolutions. It hardly needs argument to demonstrate that the commencement and mere pendency of the action in equity, wherein the relator seeks the setting aside of the vacation and establishment of the roads, and enjoining further action in pursuance of those determinations by the county commissioners, has no supersedeas effect whatever upon those decisions,

in the absence of a restraining order or temporary injunction, which, it is not claimed, has been awarded by the court in that action.

The adjudication of public use and necessity awarded by the superior court in favor of the county, looking to the acquiring of a right of way for the new road over relator's land, is affirmed.

MACKINTOSH, C. J., ASKREN, TOLMAN, and HOLCOMB, JJ., concur.